# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DAVID S. JERANIAN and     :
FRANK NORTH,       :
   Plaintiffs,       :
            :
  v.         :    C.A. No. 18-652JJM
            :
JOYCE A. DERMENJIAN,    :
   Defendant/Plaintiff in   :
   Counterclaim,     :
            :
  v.         :
            :
DAVID S. JERANIAN, Individually  :
and in his capacity as Executor of the :
Estate of Harry Jeranian, and FRANK :
NORTH, Individually,     :
   Defendants in Counterclaim. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is the motion (ECF No. 20) of Plaintiffs David S. Jeranian and Frank North to dismiss the Corrected Counterclaim of Defendant Joyce A. Dermenjian.[1] ECF No. 18 ("Countercl.").  The motion is referred to me pursuant to 28 U.S.C. § 636(b)(1)(B).

This case was commenced as a simple equitable partition action brought pursuant to R.I. Gen. Laws § 34-15-1 and § 34-15-16, *et seq.*, by two (David S. Jeranian, owner of one-half, and Frank North, owner of one-third) of the three possessory owners of a real estate parcel improved by a commercial building located at 1221 Post Road, Warwick, Rhode Island, (the "Real Estate") against the third owner (Joyce A. Dermenjian, owner of one-sixth) so that they can consummate its sale to a buyer (O'Reilly Automotive Stores, Inc. ("O'Reilly")).  According to undisputed

---

[1] Defendant filed this case *pro se* and litigated without counsel until she retained an attorney on October 25, 2019. ECF No. 49.  All of her filings made while she was *pro se* have been read with the leniency appropriate for any *pro se* litigant.  Tucker v. Wall, No. CA 07-406 ML, 2010 WL 322155, at *8 (D.R.I. Jan. 27, 2010).

representations made during the Court's recent hearing on various motions, O'Reilly apparently remains willing to purchase the Real Estate for cash at the same price originally offered in 2017, which is based on the tear-down value of the building, subject to its right to perform an inspection that has not yet occurred.

In addition to Plaintiffs' pending motion to dismiss, there are also pending motions for summary judgment (ECF Nos. 32, 34). The affidavits and statements by the parties at the hearing in connection with the summary judgment motions suggest that, despite years of vitriolic litigation between Jeranian and Dermenjian, siblings who are fighting over every aspect of their father's estate ("Harry Jeranian Estate"), the parties do not materially dispute that partition and sale of the Real Estate to O'Reilly as first proposed in 2017 is the best solution for all three owners. As Dermenjian asserts: "it is to be made clear and unambiguous that, Defendant Dermenjian does not, and did not, object to the sale of the Property." ECF No. 18 ¶ 5 ("Countercl. ¶ 5"); see ECF No. 47 at 62 ("[M]y purpose would not be to have the O'Reilly go away."). Therefore, this equitable partition action should be poised swiftly to move forward towards a just resolution.

The problem is that, despite her stated desire for a speedy sale and her bitter complaints about the delay since 2017 (which she blames on actions taken by her brother in his capacity as executor of the Harry Jeranian Estate), Dermenjian responded to the partition complaint, not just with an answer that essentially admits that the partition and sale to O'Reilly should proceed, but also with a sprawling fifty-seven page, two-hundred-and-twelve paragraph counterclaim with twenty-seven proposed remedies and forty-four attachments, which she denominated as the "Corrected Counterclaim." In it, Dermenjian focuses on how her brother acting as executor of their father's estate sued her in an effort to sell the Real Estate based on the incorrect premise

that the Harry Jeranian Estate owned or should have owned the Real Estate. As a result of this lawsuit, as the Corrected Counterclaim alleges, the sale has not been consummated and the Real Estate is deteriorating. Based on the Corrected Counterclaim, she has filed a contentious motion to compel discovery (ECF No. 26) that focuses on her brother's conduct as executor in connection with the Real Estate over several years, including requests for his privileged communications with the attorneys who have represented him in his disputes with her. Also based on the Corrected Counterclaim, she contends that she is entitled to a jury trial regarding the Real Estate and an array of other issues, including to determine whether her brother acting as executor intentionally and maliciously interfered with the sale of the Real Estate to O'Reilly, the very same buyer to whom her brother is trying to sell the Real Estate now.

Jeranian and North have moved to dismiss the Corrected Counterclaim, arguing that none of the nine Counts states a plausible claim against either of them and asking that they be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). They also argue that, with no claim that is compulsory pursuant to Fed. R. Civ. P 13(a) and joinder not required pursuant to Fed. R. Civ. P. 19(a), the pleading, in the Court's discretion, should be dismissed against Jeranian in his capacity as executor pursuant to Fed. R. Civ. P. 20. And because Dermenjian seeks to inject matters pertinent to the administration of her father's estate into this case, Plaintiffs invoke Fed. R. Civ. P. 12(b)(1) and argue that parts of the Counterclaim fail because they fall within the probate exception to federal subject matter jurisdiction. See Marshall v. Marshall, 547 U.S. 293, 310-11 (2006).

In her opposition to the motion to dismiss, Dermenjian appears to contend that she is entitled to relitigate in this partition action matters pertinent to a terminated lawsuit with her brother, Jeranian v. Dermenjian, C.A. No. 17-340JJM-LDA ("Jeranian, 17-340"). She alleges

that her brother's breach of his fiduciary duty as executor in pursuing that case has delayed the sale to O'Reilly, to which she has always been willing to assent, causing her injury. In suing Frank North, she justifies the dearth of factual allegations pertaining to him by accusing him of "cho[osing] to sit, as a silent spectator, on the sidelines, to watch the outcome of a meaningless and meritless '340' lawsuit." ECF No. 23 at 12.

In addition to her opposition to the motion to dismiss, Dermenjian has also moved for leave to amend the Corrected Counterclaim. ECF No. 22. The proposed pleading is denominated as the "Amended Corrected Counterclaim." ECF No. 22-1. The motion to amend seeks to cure some of the Corrected Counterclaim's more glaring deficiencies. Specifically, Dermenjian proposes to drop the request that this Court appoint her as executrix of her father's estate; she seeks to abandon the Count seeking to bar her brother from unjustly compensating himself as executor of their father's estate; and she no longer asks the Count to award damages to be paid by the attorney who represented her brother in his capacity as executor in Jeranian, 17-340. ECF No. 38 at 7-11. The motion to amend has also been referred to me, but pursuant to 28 U.S.C. § 636(b)(1)(A). In the interest of judicial efficiency, this report and recommendation addresses the dismissal motion in a practical fashion, focusing only on arguments that apply equally to the Amended Corrected Counterclaim.[2] Based on the analysis that follows, I recommend that the Corrected Counterclaim be dismissed without prejudice. Based on the same analysis, in a separate Order, I have denied the motion to amend as futile.

---

[2] I find that the allegations that Dermenjian seeks to abandon by proposing her Amended Corrected Counterclaim are all fatally flawed and recommend that they be dismissed. The claims seeking to appoint a new executor and to alter the executor's compensation fail pursuant to Fed. R. Civ. P. 12(b)(1) because they fall squarely into the probate exception to federal subject matter jurisdiction. Marshall, 547 U.S. at 310-11. The claim (based on an alleged conflict of interest) against the attorney fails to state a claim because he owed no attorney-client duty to Dermenjian and he is not joined as a party in this case.

# I.     BACKGROUND[3]

### A.     *Jeranian, 11-315 – First Federal Court Litigation*

The first lawsuit in this Court between these siblings was filed in 2011 and persisted until

2017.  Jeranian v. Dermenjian, C.A. No. 11-315JJM-LDA ("Jeranian, 11-315").  Jeranian, 11-

315, arose from allegations pertaining to the Cranston residence where Harry and his son then

lived.  In brief, the amended complaint alleges that, while Harry – then 87 – and his son lived in

the home, Dermenjian quitclaimed Harry's interest in the house to herself; not knowing of this

unrecorded quitclaim deed, Jeranian and Harry took out a loan and co-signed a mortgage on the

house that Harry no longer owned.  Jeranian, 11-315, ECF No. 41.  After the parties settled in

2012, Dermenjian unsuccessfully tried to resume the case in 2017 with further litigation over

whether the settlement agreement had been breached.  See Jeranian, 11-315 (Text Order of Nov.

16, 2017, denying motion for post-settlement relief).

### B.     *Dealings Regarding the Real Estate – 2014 to 2017*

The commercial Real Estate that is in issue in this case was acquired in 1985 by Harry

Jeranian,[4] David Jeranian (Harry's son), and Frank North.  ECF No. 32-3 ¶ 4.[5]  Together, these

---

[3] Except as otherwise indicated, this background statement is drawn from the Corrected Counterclaim and its attachments and exhibits (which are actually appended to an earlier iteration, the Amended Answer and Counterclaim); all of the facts derived from those sources are taken as true.  In addition, the Court has also included references from public filings and judicial decisions in other cases between Jeranian and Dermenjian.  See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (in determining Fed. R. Civ. P. 12(b)(6) motion, court may consider public records).  In connection with the Fed. R. Civ. P. 12(b)(6) motion, these public records are considered to the extent that they would be subject to judicial notice under Fed. R. Evid. 201.  Strickland-Lucas v. Citibank, N.A., 256 F. Supp. 3d 616, 623 (D. Md. 2017) (in context of motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment").

[4] To avoid confusion, Harry Jeranian is sometimes referred to as "Harry," while his son is referred to as "Jeranian" or "David Jeranian."

[5] This reference is to an affidavit filed by Frank North in connection with his pending summary judgment motion.  ECF No. 32-3.  This affidavit may not be considered in connection with the Fed. R. Civ. P. 12(b)(6) motion but is used in the above paragraph because it contains facts pertinent to setting the subsequent facts in context.  The facts in the North affidavit are also pertinent to, and it is considered in connection with, the Court's exercise of discretion pursuant to Fed. R. Civ. P. 20 and its inherent power as discussed *infra*.  The facts from the North affidavit may be

three ran an insurance business that they operated out of the Real Estate, which they owned in three equal shares as co-tenants.  Id.; see Countercl. ¶ 6.  In 2014, they decided to sell the Real Estate.  ECF No. 32-3 ¶ 6.  To market the Real Estate, they engaged Rodman Real Estate Inc. ("Rodman").  Id. ¶ 7; Countercl. ¶ 5.  However, before the Real Estate was sold, on April 11, 2016, Harry died.  ECF No. 32-3 ¶ 9; Countercl. ¶ 6.  David Jeranian is the executor of Harry's estate.  Countercl. ¶ 2.

On March 18, 2016, just before Harry died, Dermenjian, acting as the holder of Harry's power of attorney, established the Harry Jeranian Irrevocable Real Estate Trust ("HJIRET"), and executed a quitclaim deed of Harry's one-third interest in the Real Estate to herself as trustee. Countercl. ¶ 36 & Ex.[6] 12 at 6 (ECF No. 14-24 at 6).  Then, on January 19, 2017, Dermenjian (as trustee of HJIRET) executed a second quitclaim deed conveying HJIRET's one-third interest in the Real Estate to herself and her brother, as tenants-in-common.  Countercl. ¶ 12 & Ex. 12 at 3-6.

Meanwhile, Rodman continued to work on trying to sell the Real Estate.  See Jeranian, 17-340, ECF No. 2 ¶¶ 19-21.  In February 2017, an agreement to sell was reached with O'Reilly. Countercl. ¶ 19.  However, as a result of the two quitclaim deeds, Dermenjian owned a one-sixth

---

[6] Unless noted otherwise, the references to exhibits and attachments are those appended to Dermenjian's Amended Answer and Counterclaim, which was her first version of her counterclaim.  See ECF Nos. 14, 14-1 through 14-44. She quickly substituted her Corrected Counterclaim (ECF No. 18) for the Amended Answer and Counterclaim, but did not refile the exhibits and attachments.  For the attachments that lack exhibit numbers, the ECF citation is provided.

three ran an insurance business that they operated out of the Real Estate, which they owned in three equal shares as co-tenants.  Id.; see Countercl. ¶ 6.  In 2014, they decided to sell the Real Estate.  ECF No. 32-3 ¶ 6.  To market the Real Estate, they engaged Rodman Real Estate Inc. ("Rodman").  Id. ¶ 7; Countercl. ¶ 5.  However, before the Real Estate was sold, on April 11, 2016, Harry died.  ECF No. 32-3 ¶ 9; Countercl. ¶ 6.  David Jeranian is the executor of Harry's estate.  Countercl. ¶ 2.

On March 18, 2016, just before Harry died, Dermenjian, acting as the holder of Harry's power of attorney, established the Harry Jeranian Irrevocable Real Estate Trust ("HJIRET"), and executed a quitclaim deed of Harry's one-third interest in the Real Estate to herself as trustee. Countercl. ¶ 36 & Ex.[6] 12 at 6 (ECF No. 14-24 at 6).  Then, on January 19, 2017, Dermenjian (as trustee of HJIRET) executed a second quitclaim deed conveying HJIRET's one-third interest in the Real Estate to herself and her brother, as tenants-in-common.  Countercl. ¶ 12 & Ex. 12 at 3-6.

Meanwhile, Rodman continued to work on trying to sell the Real Estate.  See Jeranian, 17-340, ECF No. 2 ¶¶ 19-21.  In February 2017, an agreement to sell was reached with O'Reilly. Countercl. ¶ 19.  However, as a result of the two quitclaim deeds, Dermenjian owned a one-sixth

---

briefly summarized.  North avers that he is now 83 years old and retired; since 2017, North has suffered from compromised health and has been living in Florida with his wife.  Id. ¶¶ 1, 5.  His ownership interest in the Real Estate goes back to 1985, when the building was purchased with his business associates (Harry and David Jeranian) to house their successful insurance business.  Id. ¶ 4.  After working together for many years, the three business associates decided to sell the Real Estate in 2014 and together engaged a realtor to market it.  Id. ¶ 7.  However, before the Real Estate was sold, Harry Jeranian died in 2016.  Id. ¶ 9.  North stopped working in 2016 and wants the Real Estate to be sold so that he can use the proceeds to support himself and his wife in their retirement.  Id. ¶ 11.  In her response to the pending summary judgment motion, Dermenjian did not dispute any of the facts in the North affidavit.

[6] Unless noted otherwise, the references to exhibits and attachments are those appended to Dermenjian's Amended Answer and Counterclaim, which was her first version of her counterclaim.  See ECF Nos. 14, 14-1 through 14-44. She quickly substituted her Corrected Counterclaim (ECF No. 18) for the Amended Answer and Counterclaim, but did not refile the exhibits and attachments.  For the attachments that lack exhibit numbers, the ECF citation is provided.

interest, Jeranian owned a one-half interest and Frank North owned a one-third interest; the

Harry Jeranian Estate owned nothing. Jeranian, 17-340, ECF No. 2 ¶¶ 19-20 & Ex. 12. In June

2017, O'Reilly signed an adjusted offer to purchase the Real Estate, now from Jeranian,

Dermenjian and North based on their actual respective ownership interests. Countercl. ¶ 32;

ECF No. 14-23. In this offer, O'Reilly proposed to pay $795,000 with an earnest deposit of

$5,000; the offer contemplated "a cash transaction [with] no lender involved." ECF No. 14-23 at

1; Countercl. ¶ 177. During June 2017, Dermenjian was willing to sell, but disagreed with the

documents that Jeranian's counsel proposed to implement the transaction; in the course of this

correspondence, each sibling threatened to sue the other. Countercl. ¶¶ 46-47 & Exs. 7, 9, 10,

15. After the O'Reilly purchase agreement expired on June 28, 2017, Jeranian filed Jeranian, 17-

340. Countercl. ¶¶ 53, 74. In filing this complaint, Jeranian acted solely in his capacity as

executor of the Harry Jeranian Estate. Id.; Jeranian, 17-340, ECF No. 2.

>        C.      *Jeranian, 17-340 – Second Federal Court Litigation*

In Jeranian, 17-340, Jeranian, acting as executor of the Harry Jeranian Estate, alleged that

Dermenjian had refused to execute the documents necessary to allow transfer of marketable title

to O'Reilly, and consequently the opportunity to sell at a good price had been lost. Jeranian, 17-

340, ECF No. 2. Dermenjian responded with a motion to dismiss, arguing that, on its face, the

complaint established that the Harry Jeranian Estate never had any interest in the Real Estate, so

that Jeranian as executor had no standing and had suffered no injury. She further represented

that she was ready, willing and able to sign an appropriate deed transferring her one-sixth interest

to O'Reilly, but was prevented from doing so by the "interfering actions of Executor Jeranian."

Countercl. ¶ 59. The Court agreed with her motion and found the complaint to be deficient

because Jeranian, acting as executor, lacked standing with respect to Real Estate that the Harry Jeranian Estate did not own and had never owned.

At the end of the hearing on Dermenjian's motion to dismiss, the Court noted that the Real Estate should be sold to O'Reilly for the previously agreed-upon price if still possible. Jeranian, 17-340, ECF No. 14 at 20-21; see Countercl. ¶ 57. In reliance on the representation of Dermenjian's attorney that she was willing, the Court urged the parties to work to develop documents acceptable to both to get that done: "[b]oth sides in my opinion are taking unreasonable positions on something that has no meaning except to continue a dispute that doesn't need to exist." Jeranian, 17-340, ECF No. 14 at 20-21; id. at 25 ("I highly encourage you to save the $790,000 deal to go sit on a bench out there and figure out how to resolve this."). In addition, finding that Jeranian might have a viable claim on behalf of the Estate if he were adequately to plead breach of fiduciary duty or fraud with particularity, the Court gave him leave to file an amended complaint. Id. at 24. Jeranian opted not to do so, instead moving for leave to voluntarily dismiss the case without prejudice, which the Court allowed. Jeranian, 17-340, ECF No. 15; Text Order of Nov. 27, 2017. Dermenjian objected and moved for dismissal with prejudice; the Court denied her motion. Jeranian, 17-340, ECF No. 16; Text Order of Jan. 19, 2018.

> D. *Dermenjian, PC-2017-5076 – Superior Court Litigation*

While the motion to dismiss in Jeranian, 17-340, was pending in federal court, on October 24, 2017, Dermenjian sued Jeranian and his attorney, as co-trustees of a Harry Jeranian Trust in Providence County Superior Court. Dermenjian, PC-2017-5076 (Compl. filed Oct. 24, 2017). In this suit, Dermenjian accused her brother of breach of fiduciary duty and complained of his rude treatment; the gravamen of the case is focused on the use of money from the Harry

Jeranian Trust to pay expenses that Dermenjian believes should have been borne by the Harry Jeranian Estate (including costs for an appraisal of the Real Estate). In February 2018, shortly after <u>Jeranian</u>, 17-340, was terminated in federal court, Dermenjian's motion for temporary restraining order in the Superior Court was denied, as she alleges, because Justice Gallo found that, "[i]t was her fault," referring to her sale to herself of her father's interest in the Real Estate. <u>Dermenjian</u>, PC-2017-5076 (mot. to lift stay filed July 1, 2019). And following a hearing in April 2018, Justice Keough refused to permit Dermenjian to voluntarily dismiss without prejudice, instead staying the matter pending the resolution of the probate of the Harry Jeranian Estate. <u>Dermenjian</u>, PC-2017-5076 (Order entered May 8, 2019); Countercl. ¶ 81. Dermenjian recently moved to lift the stay, a motion that Justice Long denied in an order entered on October 31, 2019. <u>Dermenjian</u>, PC-2017-5076 (Order entered Oct. 31, 2019). Dermenjian has filed a notice of appeal of Justice Long's order to the Rhode Island Supreme Court. <u>Dermenjian</u>, PC-2017-5076 (notice of appeal filed Oct. 22, 2019).

E.    *Post-<u>Jeranian</u>, 17-340, Efforts to Sell in 2017 and 2018*

Despite the representations of Dermenjian's attorney to this Court on October 30, 2017, that she was ready to execute a deed to O'Reilly, <u>Jeranian</u>, 17-340, ECF No. 14 at 20-21, and despite her vigorous and repeated asseveration in the Corrected Counterclaim that she has been willing to do so since 2017, Countercl. ¶ 5, the Corrected Counterclaim contains no factual allegations that explain why the documents to facilitate the sale of the Real Estate were not executed at any time between the October 30, 2017, hearing and the filing of the partition complaint in Rhode Island Superior Court on October 17, 2018. Rather, the Corrected Counterclaim pleads that Dermenjian was willing to permit the sale to proceed (a) only if she was paid more than one-sixth of the pending offer for the Real Estate; (b) only if she was not

required to bear any of the costs of sale (including any portion of Rodman's fee for marketing the Real Estate, any portion of the cost of a title report or any portion of the cost of the appraisal); and (c) as to some of her proposals, only if other disputes related to the Harry Jeranian Estate or Trust were resolved on specified terms.  Id. ¶¶ 13-16 & Exs. 4, 4A, 5, 5A. Meanwhile, during the fall of 2018, Jeranian, negotiating without including Dermenjian, was able to confirm that O'Reilly remained willing to acquire the Real Estate for the same price and terms.  Countercl. ¶¶ 92-95.  An appraisal of the Real Estate procured by Jeranian establishes that the Real Estate's fair market value is just over $824,000, not much more than the O'Reilly offer of $795,000.  Id. ¶¶ 92-95, 128-129 & Ex. 22.  Dermenjian alleges that, at all times that O'Reilly was willing to purchase the Real Estate, she was a ready, willing and able seller, but that she "was presented with numerous obstacles by Executor Jeranian, in order for the sale to execute, in addition to preventing Dermenjian, as a rightful owner, from engaging in the process of marketing and sale of the Property."  Countercl. ¶ 102.

> F.    *The Partition Complaint and Answer*

After Jeranian and Frank North filed this partition action in Superior Court, Dermenjian removed it to this Court on December 3, 2018, based on the Court's diversity jurisdiction because the amount in controversy exceeds $75,000 and she is a citizen of Massachusetts while Jeranian is a citizen of Rhode Island and North is a citizen of Florida.  According to the partition complaint and confirmed by Dermenjian's answer, as of today, the Real Estate has three possessory owners who each hold fee simple undivided co-tenancies as follows: Jeranian has a one half interest; North has a one-third interest; and Dermenjian has a one-sixth interest.  ECF No. 14-24.  As established by the pleadings, all parties agree that no interest in the Real Estate is held by (a) the Harry Jeranian Estate, (b) Jeranian, in his capacity as executor of the Harry

Jeranian Estate or (c) Dermenjian in her capacity as trustee of the HJIRET. Countercl. ¶¶ 5, 25, 50. The partition complaint recites that there is a "ready, willing and able cash buyer that has made a fair and reasonable offer," and asks the Court to order partition by sale. ECF No. 1-1 ¶ 12. Under R.I. Gen. Laws § 34-15-18, such a partition is conducted under the direction of the Court, with the proceeds of the sale allocated among the parties after deduction from each share of a reasonable portion of the costs and expenses of partition, with equitable apportionment of costs established by the Court pursuant to R.I. Gen. Laws § 34-15-22. Rhode Island law does not provide a right to trial by jury in a partition action because it is equitable in nature. Tinney v. Tinney, 770 A.2d 420, 437 (R.I. 2001).

In her answer to the partition complaint, Dermenjian admits to most of the material allegations, and alleges that she has never been unwilling to agree to the sale of the Real Estate. As an affirmative defense, she relies on waiver, estoppel, and unclean hands; she also asserts that no costs or expenses should be allocated to her share of the sale proceeds because the sale was improperly delayed by her brother's pursuit in his capacity as executor of the unnecessary litigation in Jeranian, 17-340, and because the partition action itself is not necessary in light of her willingness to agree to sell.

G. The Corrected Counterclaim

In her Corrected Counterclaim, Dermenjian complains bitterly about the conduct of her brother as executor of the estate in acting on the false premise that the Harry Jeranian Estate had an interest in the Real Estate, which was the basis for the actions he took before and during Jeranian, 17-340. She complains that the appraisal was done without her input. Countercl. ¶¶ 128-29 & Ex. 22. She complains about the lack of proof that the O'Reilly offer is "fair and reasonable." Id. ¶¶ 128, 137. She complains that Jeranian did not include her in the discussions

with Rodman and O'Reilly to revive the sale.  Id. ¶¶ 128-33, 137-40.  She complains that

Rodman's representative was rude to her.  Id. ¶¶ 151, 155 ("forceful, demanding").  She

complains about Attorney Andrew Davis, who represented the estate and tried to develop

documents to consummate the sale of the Real Estate to O'Reilly.  E.g., id. ¶¶ 28-31.  She

complains that Jeranian acting in his capacity as executor was deceptive and misleading towards

her, which interfered with her rights to the Real Estate.  Id. ¶¶ 33-48, 60-62.

The Corrected Counterclaim adds a party not found in the partition complaint – Jeranian

in his capacity as the executor of the Harry Jeranian Estate – although it is not clear whether he

has ever been served.[7]  It contains the following claims:

- Count I: Tortious interference with Defendant's access, use and enjoyment of the Property;

- Count II: Deliberate and intentional cause of Property's deterioration;

- Count III: Tortious interference with expectant prospective contractual relations with O'Reilly resulting in loss of sale of property to O'Reilly;

- Count IV: Breach of fiduciary duty as tenants-in-common;

- Count V: Unjust enrichment / executor's compensation;

- Count VI: Executor Jeranian's breach of fiduciary duty;

- Count VII: Negligence;

-  Count VIII: Attempted fraud, deception and misrepresentation;

- Count IX: Conflict of interest by Attorney Maglio.

Counts V and IX are proposed for elimination by the Amended Corrected Counterclaim.[8]

Counts I, II, III and IV are directed at Frank North and Jeranian individually.  Count III also is

---

[7] In light of my recommendation that Jeranian in his capacity as executor does not belong in this case, I have made no attempt to unravel whether he was ever served and joined.

[8] See n.2 *supra*.

directed at Jeranian in his capacity as the executor of the Harry Jeranian Estate. The remaining

Counts (VI-VIII) are aimed only at Jeranian in his capacity as executor of the Harry Jeranian

Estate. The pleading's prayer for relief stretches over six pages and seeks twenty-seven separate

remedies.[9] It asks for trial by jury on "all Counts." Id. ¶ AA.

## II.    STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept as true all

plausible factual allegations in the challenged pleading and draw all reasonable inferences in

claimant's favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the Court is

guided by the now familiar standard requiring enough facts to state a claim for relief that is

plausible: if "the plaintiffs [can]not nudge[] their claims across the line from conceivable to

plausible, their complaint must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In performing the Fed. R. Civ. P. 12(b)(6)

plausibility analysis, exhibits attached to the complaint are "properly considered part of the

pleading 'for all purposes.'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321

(1st Cir. 2008). When dealing with pleadings of considerable length, "[t]he Court 'will not mine

a lengthy complaint searching for nuggets that might refute obvious pleading deficiencies.'"

Gosselin v. Fed. Nat'l Mortg. Ass'n, C.A. No. 18-438WES, 2018 WL 4629248, at *2 (D.R.I.

Sept. 27, 2018) (quoting Neubauer v. FedEx Corp., 849 F.3d 400, 404 (8th Cir. 2017)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court should

apply a standard of review "similar to that accorded a dismissal for failure to state a claim under"

---

[9] One proposed remedy – appointment of Dermenjian as executrix – is proposed for deletion by the Amended Corrected Counterclaim. See n.2 supra.

Fed. R. Civ. P. 12(b)(6).  Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012).  However, "[w]hile the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion."  Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

Rules 19 and 20 deal with required and permissive joinder of parties.  Fed. R. Civ. P. 19, 20.  In considering joinder issues, "a court essentially will decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party."  Pujol v. Shearson Am. Exp., Inc., 877 F.2d 132, 134 (1st Cir. 1989).  The joinder Rules require the Court to be mindful of the policies that underlie Fed. R. Civ. P. 19 and 20, "including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them."  Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 15-16 (1st Cir. 2008).  When joinder is permissive, the court's focus should be on "promot[ing] trial convenience and expedit[ing] the final determination of disputes."  Travelers Ins. Co. v. Intraco, Inc., 163 F.R.D. 554, 556 (S.D. Iowa 1995).

## III.   ANALYSIS

### A.   *Motion to Dismiss Claims Against Frank North*

In considering the motion to dismiss claims against Frank North based on Fed. R. Civ. P. 12(b)(6), the Court has scoured the Corrected Counterclaim (and the Amended Corrected Counterclaim) for factual allegations purporting to state a plausible claim and has come up dry. North's transgression seems to be his status as an owner of one-third of the Real Estate, which is derived from having worked for many years in the insurance business with Harry Jeranian and

his son, coupled with his failure to intervene while Jeranian, in his capacity as executor of the Harry Jeranian Estate, pursued Jeranian, 17-340, to try to get the property sold through the vehicle of the Harry Jeranian Estate. See Countercl. ¶ 174 ("Plaintiffs sat on their hands, silently, in support of the Executor Jeranian."). Otherwise, the Corrected Counterclaim says nothing about North. Based on the Corrected Counterclaim's inclusion of North (along with Jeranian acting individually) in the defined term, "Plaintiffs," the only arguable exceptions are conclusory allegations, such as that "Plaintiffs . . . interfered with [her] right to use and enjoyment of the Property by preventing her access to the Property, in the way of not providing her with keys and security alarm codes," id. ¶ 164; "Plaintiffs failed to maintain the property and, as a result, caused the Property to deteriorate . . . [and] compromised the Property's availability to generate rental income,"[10] id. ¶¶ 170-71; and "Plaintiffs have acted in bad faith . . . by not communicating with her," id. ¶ 180. None of these is sufficient to clear the Twombly/Iqbal bar. See Laurence v. Wall, No. CA 09-427 ML, 2009 WL 4780910, at *3 (D.R.I. Dec. 10, 2009) (sweeping allegations regarding conduct of "all defendants" without any additional facts "fail[s] to provide adequate specificity to state a claim against these defendants").

In the absence of any substantive factual allegations against him, the Corrected Counterclaim as to Frank North should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). The Court adds a caution – such an assertion of claims with no factual foundation could be seen as frivolous. See Flores v. U.S. Atty. Gen., No. CA 14-24 S, 2014 WL 1453851,

---

[10] Because there are no facts to sustain such a claim, the Court need not grapple with whether Rhode Island law imposed a fiduciary duty (or some other duty) on North as a tenant-in-common to maintain and rent the Real Estate for the benefit of Dermenjian or whether she has adequately pled a cognizable injury arising from a breach of such a duty. There appear to be no Rhode Island cases that are directly on point. See 86 C.J.S., Tenancy in Common § 18 ("[T]he mere fact of cotenancy alone does not create such a [fiduciary] relationship.").

at *1 (D.R.I. Apr. 14, 2014) ("A claim 'is frivolous where it lacks an arguable basis either in law or in fact.'") (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

B.  *Motion to Dismiss Claims Against Jeranian Individually*

Based on Dermenjian's use of the defined term, "Plaintiffs," it is clear that Counts I, II, III and IV purport to sue Jeranian individually. In light of the prolixity of Dermenjian's Corrected Counterclaim, it is difficult to tease out what are the facts supporting plausible claims against Jeranian acting for himself and not in his capacity as the executor of the Harry Jeranian Estate. Having performed this task, I find that the Corrected Counterclaim against Jeranian individually does not fare well under Twombly/Iqbal scrutiny. It essentially amounts to nothing more than the same conclusory allegations already found to be insufficient to state a claim against Frank North.

The factually-based foundation for the Corrected Counterclaim is that Dermenjian wanted the Real Estate to be sold, but that Jeranian, acting in his capacity as executor, particularly by filing Jeranian, 17-340, delayed the sale and, during the delay, the Real Estate deteriorated. Against this backdrop, the vague and conclusory allegations against Jeranian individually are simply not plausible. As I found, *supra*, with respect to Frank North, I similarly find that the same vague pleading is also not sufficient to state a plausible claim against Jeranian individually and should be dismissed. See Laurence, 2009 WL 4780910, at *3.

C.  *Joinder of Jeranian in his Capacity as Executor of the Harry Jeranian Estate*

Much of the Corrected Counterclaim seems to be an attempt to relitigate Jeranian, 17-340, particularly the Court's determination that Jeranian in his capacity as executor would be allowed to dismiss that case without prejudice. More than half of the Counts (Counts III, VI, VII and VIII) are focused on Jeranian as executor, whose conduct, Dermenjian claims, interfered

with the expeditious sale of the Real Estate.  Most of the balance is aimed indirectly at Jeranian as executor in that Counts I, II, III and IV blame North and Jeranian individually for Jeranian's actions as executor in filing <u>Jeranian</u>, 17-340, which Dermenjian claims is the cause of the delay in the sale of the Real Estate and its resulting deterioration.  However, Jeranian as executor is a stranger to the now-pending partition complaint because Dermenjian succeeded in her efforts to make sure that her brother in that capacity had and has no rights with respect to the Real Estate.  As this Court held in <u>Jeranian</u>, 17-340, Jeranian, in his capacity as executor, has no claim to the subject matter (the Real Estate) and the three owners (Jeranian individually, Frank North and Dermenjian) may be accorded complete relief as to the partition of the Real Estate without his joinder.  Accordingly, in his capacity as executor, Jeranian is not a person required to be joined pursuant to Fed. R. Civ. P. 19(a) (joinder of a person is required when that person is required for complete relief among the parties or that person has an interest in the subject of the action).

That leaves only permissive joinder, which the Court may allow in its discretion when the right to relief arises out of the same transaction or implicates common questions of law or fact with other claims in issue in the case.  Fed. R. Civ. P. 20(a); <u>First Specialty Ins. Corp. v. Maine Coast Marine Constr., Inc.</u>, Civil No. 06-119-B-K, 2007 WL 2556237, at *1 (D. Me. Aug. 31, 2007) ("The question of whether to permit the joinder of additional parties is a matter resigned to the Court's discretion.").  "[T]he relevant inquiry is whether [the defendant's] counterclaim 'arises out of the same transaction or occurrence' as [the plaintiff's] claims" or the "questions of law and fact between the original complaint and the counterclaim are closely related." <u>Ophthalmics Suppliers, Inc. v. Coopervision, Inc.</u>, No. Civ. 05-1505(HL), 2005 WL 2001295, at *2 (D.P.R. Aug. 19, 2005).  The purpose of Fed. R. Civ. P. 20 "is to promote trial convenience and expedite the final determination of disputes." <u>Travelers Ins. Co.</u>, 163 F.R.D. at 556.  The

transaction and common question requirements of the Rule are "flexible concepts" to implement

its purpose.  7 Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1653, at 389 (3

ed.).  They should be "read as broadly as possible whenever doing so is likely to promote judicial

economy."  Id.  If it would be inefficient to add a new party, mere overlap of subject matter is

not enough.  Carabillo v. ULLICO, Inc., 357 F. Supp. 2d 249, 256 (D.D.C. 2004) (where

complaint related to employee's retirement benefits, joinder under Rule 20 not proper for

corporate officer accused of breaching fiduciary duty regarding stock plan; counterclaim "draws

no coherent connection with the retirement benefits at issue").

The Jeranian/North partition action is elegant in its simplicity.  It is based on the desire of

three owners as tenants-in-common to sell real estate, and it rests on facts that appear largely

undisputed and on law limned by a handful of sections of the Rhode Island General Laws.  No

jury trial is needed; it appears likely that the only issue for the Court will be the allocation of the

shares, with application of costs and expenses[11] directly related to the sale pursuant to R.I. Gen.

Laws § 34-15-22.  Thus, despite the overlap of the subject matter (the Real Estate), there simply

is no logical relationship between Dermenjian's many allegations regarding her brother's

exercise of his fiduciary duty as executor and the simple fact that the Real Estate needs to be sold

and the parties need the Court's help to get it done.  Far from serving efficiency, joinder of

Jeranian as executor in this case would drag this dispute on for years, causing further

deterioration of the Real Estate, burdening the City of Warwick with an unoccupied structure,

and depriving Frank North of the ability to sell his interest as he originally planned when the

three owners first decided to sell in 2014.

---

[11] Dermenjian's statements to the Court at the October 10, 2019, hearing – namely, that, with the possible exception of the environmental clause, she agrees that partition by sale should occur and that it is reasonable and desirable for the sale to proceed consistent with the terms of the O'Reilly purchase agreement – further demonstrate that allocation is likely the only issue left.  ECF No. 47 at 14, 16, 26-27, 36-40, 62.

Mindful of the interests of judicial economy, the expeditious resolution of disputes, and the equities implicated by the underlying partition action, I recommend that the Court exercise its discretion to decline to permit permissive joinder of Jeranian in his capacity as executor of the Harry Jeranian Estate.[12]

Because this recommendation leaves most of the Corrected Counterclaim with no defendant against whom the claims are asserted, I pause to consider whether any of the Counts in the Corrected Counterclaim that are based solely on the conduct of Jeranian in his capacity as executor are compulsory pursuant to Fed. R. Civ. P. 13(a). Rule 13(a) requires a party to assert any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1). Here, although the complaint and counterclaims share a core subject (the Real Estate), the issues of fact and law implicated by the partition of the Real Estate and the allocation of the proceeds to the three tenants-in-common, on one hand, and Dermenjian's claims against her brother for his actions as executor of the Harry Jeranian Estate on the other, are entirely different; litigation of the complaint and counterclaim will involve different evidence; and they lack a logical relationship to each other. Most importantly, because he is not a party in his capacity as executor, *res judicata* arising from a judgment in this case would not bar Dermenjian from bringing her claims against her brother for his actions as executor of the Harry Jeranian Estate. Therefore, Fed. R. Civ. P. 13(a) is not

---

[12] Because I recommend that Jeranian in his capacity as executor does not belong in this case, I do not reach another flaw that pervades the Corrected Counterclaim – that is, even as proposed for amendment, it raises issues and seeks remedies that are reserved for the probate court over which this Court lacks subject matter jurisdiction. See Marshall, 547 U.S. at 310-11. All such matter must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). If the Court contemplates allowing some part of the Corrected Counterclaim to proceed against Jeranian in his capacity as executor, I recommend that Dermenjian be ordered to scrap the current version and to replead with a counterclaim that is completely purged of all such material.

transgressed by the elimination of these Counts from the case.[13]   Accordingly, I recommend that the Court dismiss them without prejudice.  These are Counts III,[14] VI, VII and VIII.[15]

D. *Dismissing Counterclaim Material That is Redundant of Affirmative Defenses*

To the extent that the Corrected Counterclaim makes allegations that pertain to the allocation of the direct costs and expenses of the sale that must be done by the Court at the conclusion of the partition action, Dermenjian has properly raised those matters as affirmative defenses in her answer.  ECF No. 14.  To the extent that the Corrected Counterclaim redundantly replicates these affirmative defenses, albeit improperly asserting the right to trial by jury on issues reserved for the Court, they should be dismissed as unnecessary surplusage.  Zurich Am. Ins. Co. v. Watts Regulator Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011) (court may dismiss "repetitive and unnecessary pleadings, such as a counterclaim that merely restates an affirmative defense").

E. *Court's Inherent Authority to Manage Dockets Justly and Expeditiously*

---

[13] Another potential reason why Fed. R. Civ. P. 13(a) is not an impediment to dismissal without prejudice of all claims against Jeranian in his capacity as executor of the Harry Jeranian Estate is that they may have been the subject of other pending actions.  Fed. R. Civ. P. 13(a)(2)(A).  To make this determination, it would require the Court to examine what is pending in the Harry Jeranian Estate probate proceedings, as well as the currently stayed Providence County Superior Court action (Dermenjian, PC-2017-5076).  Because it is clear that these are not compulsory counterclaims, I have not considered this alternative reason for why dismissal of them without prejudice does not adversely affect Dermenjian.

[14] Count III makes factual allegations regarding only the conduct of Jeranian in his capacity as executor.  Countercl. ¶¶ 173-77.  However, according to the heading, Count III is described as a claim not just against "Executor Jeranian," but also against "Plaintiffs" (defined as Jeranian individually and Frank North).  But as to North and Jeranian individually, Count III states only, "Plaintiffs sat on their hands, silently, in support of the Executor Jeranian."  Id. ¶ 174.  As noted *supra*, this is not sufficient to state a plausible claim against either of them.  Therefore, the recommendation above is based on the premise that Count III potentially states a claim against only Jeranian in his capacity as executor of the Harry Jeranian Estate.

[15] Count VIII, based on fraud, is separately challenged as failing to allege any specific statements by Jeranian acting as executor on which Dermenjian relied to her detriment.  In light of the recommendation that Count VIII be dismissed without prejudice pursuant to Fed. R. Civ. P. 20, the Court need not reach this potential reason to recommend dismissal.

While rarely exercised to dismiss without prejudice an otherwise viable counterclaim, the Court's inherent authority to manage its docket and achieve the orderly and expeditious disposition of cases is an appropriate tool to address Dermenjian's effort to exponentially complicate this simple partition action, continue the burden on the community caused by a deteriorating building and hold up the ability of Frank North to liquidate his interest in the Real Estate. See Durr v. Adams Beverages, Inc., 710 F. App'x 358, 360 (11th Cir. 2017) ("district courts have the power to manage their dockets" which includes "the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation"); Supplement Ctr., LLC v. Evol Nutrition Assocs., Inc., 389 F. Supp. 3d 1281, 1286 (N.D. Ga. 2019) (same). This "inherent authority [includes the power] to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016). Mindful of the powerful cautionary tale regarding the corrosive effects of endless family litigation told by Charles Dickens in Bleak House,[16] and relying on the anchor of the Court's inherent power, I recommend that the Court dismiss Dermenjian's Corrected Counterclaim without prejudice so that the partition of the Real Estate will not be bogged down by the siblings' dispute over their father's estate, but will expeditiously proceed to a just and equitable conclusion.

## IV.     CONCLUSION

To be clear, my recommendation is not intended to suggest that Dermenjian may not be able to marshal facts now missing from her seriously deficient Corrected Counterclaim to buttress a plausible claim against Frank North and Jeranian individually. Nor am I recommending that the Court hold that Dermenjian is foreclosed from suing her brother in his

---

[16] See Charles Dickens, Bleak House, 17 (1853) ("Jarndyce and Jarndyce still drags its dreary length before the Court, perennially hopeless.").

capacity as executor of the Harry Jeranian Estate to recover the damages she claims to have suffered from the delay of the sale of the Real Estate (at the same time that he retains the right to blame her for the same delay). Rather, my recommendation is animated by the many considerations appropriate to the exercise of the Court's discretion to manage this partition action by keeping it simple and focused, particularly in light of the equitable impact of further delay on Frank North, who has been unable to access a part of his life's work, and on the public who live in the City of Warwick and have been dealing with a deteriorating structure. Based on the foregoing, I recommend that the Court grant Plaintiffs' motion (ECF No. 20) and dismiss Dermenjian's Corrected Counterclaim without prejudice.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 15, 2019