UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID S. JERANIAN and　　　　　　　　　:
FRANK NORTH,　　　　　　　　　　　　　:
　　　Plaintiffs,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　　　　　　　:　　C.A. No. 18-652JJM
　　　　　　　　　　　　　　　　　　　　　　　:
JOYCE A. DERMENJIAN,　　　　　　　　　:
　　　Defendant/Plaintiff in　　　　　　　　　:
　　　Counterclaim,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
DAVID S. JERANIAN, Individually　　　　　　:
and in his capacity as Executor of the　　　　:
Estate of Harry Jeranian, and FRANK　　　　:
NORTH, Individually,　　　　　　　　　　　　:
　　　Defendants in Counterclaim.　　　　　　:

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Having dealt with an array of preliminary motions[1] in this partition action, the Court next turns to the parties' dueling motions for summary judgment. First is the motion (ECF No. 32) of Plaintiffs David S. Jeranian and Frank North asking the Court to enter judgment pursuant to R.I. Gen. Laws § 34-15-16 ordering that the property in issue (commercial property located at 1221 Post Road, Warwick, Rhode Island ("the Real Estate")) shall be partitioned by sale, following which a commissioner shall be appointed pursuant to R.I. Gen. Laws § 34-15-24 to sell the Real Estate either at public auction or by private contract under the direction of the Court.[2] Second is

---

[1] My report and recommendation recommending that the Court exercise its discretion to dismiss without prejudice Defendant's Corrected Counterclaim issued on November 15, 2019. ECF No. 53. The Court has also denied Defendant's motion for leave to amend the Corrected Counterclaim and denied without prejudice Defendant's motion to compel. Text Orders of November 15, 2019.

[2] The latter aspect of Plaintiffs' prayer for relief is articulated in their post-hearing submission. ECF No. 51. In their original filings they did not ask for the appointment of a commissioner; their shift of position came during the hearing when the Court pointed out that the statutory scheme contemplates the appointment of a commissioner.

the cross-motion (ECF No. 34) for summary judgment of Defendant Joyce A. Dermenjian, filed while she was *pro se*.[3] Her motion appears to ask the Court to allow her to have a jury trial on her claims against her brother, David Jeranian, in his capacity as executor of the estate of their father, Harry Jeranian, arising from the filing of Jeranian v. Dermenjian, C.A. No. 17-340JJM-LDA ("Jeranian, 17-340").[4] Dermenjian's motion for summary judgment seems to seek to relitigate the Court's denial of her motion to dismiss Jeranian, 17-340, with prejudice, as well as to argue that partition is not necessary because she has never opposed the sale of the Real Estate and that there are disputed issues in relation to whether the Real Estate can be sold to O'Reilly Automotive Stores, Inc. ("O'Reilly"), for terms and a price that are reasonable and appropriate.

Both motions are referred to me pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. BACKGROUND[5]

It is undisputed that this is an action in equity for partition and sale of commercial real property with a building, located at 1221 Post Road, Warwick, Rhode Island. PSUF ¶ 1. No party disputes that there are three owners, each with a possessory interest; as tenants-in-common, each holds a fee simple interest as follows: David Jeranian has an undivided one half (1/2) interest; Frank North has an undivided one-third (1/3) interest; and Joyce Dermenjian has an undivided one-sixth (1/6) interest. Id. ¶¶ 1-2 & ECF No. 32-7 ("Pls. Ex. F"). This distribution

---

[3] Dermenjian is now represented by counsel. Because this filing was made while she was *pro se*, it has been read with the leniency appropriate for any *pro se* litigant. Tucker v. Wall, No. CA 07-406 ML, 2010 WL 322155, at *8 (D.R.I. Jan. 27, 2010).

[4] My recommendation that the Court should exercise its discretion to dismiss Dermenjian's counterclaims without prejudice is currently pending. ECF No. 53.

[5] Except as otherwise noted, this background is drawn from those of the parties' factual submissions (ECF No. 33 ("PSUF"), ECF No. 40 ("DSDF"), and ECF No. 41 ("DSUF")), that are undisputed, as well as from the Dermenjian affidavit, ECF No. 39-1 ("Dermenjian Aff."). This background assumes the reader's familiarity with the background in my November 15, 2019, report and recommendation (ECF No. 53).

of ownership is confirmed in a Report on Title prepared for Joyce Dermenjian dated April 12, 2017, the authenticity and accuracy of which no party contests. PSUF ¶ 2.

The parties do not dispute that the Real Estate was purchased in 1985 in three equal shares as tenants-in-common by David Jeranian, Frank North (who are the Plaintiffs in this partition action), and Harry Jeranian,[6] the father of David Jeranian and Dermenjian. Id. ¶ 3. Harry Jeranian, Frank North and David Jeranian ran an insurance business out of the Real Estate for twenty years until 2014 when they decided to begin to wind down the business and to sell the Real Estate. Id. ¶¶ 4, 6, 8. They hired Rodman Real Estate Inc. ("Rodman"), a commercial real estate broker, to market the Real Estate; all three owners signed an exclusive listing agreement with Rodman. Id. ¶ 7. Despite Rodman's ongoing efforts at actively marketing the Real Estate beginning in 2014, the Real Estate had not been sold when, on April 11, 2016, Harry Jeranian died. Id. ¶ 10.

The parties do not dispute that, on March 18, 2016, a little over three weeks before her father died, acting as his agent pursuant to a power of attorney, Dermenjian quitclaimed Harry's one-third interest in the Real Estate to herself as trustee of the Harry Jeranian Irrevocable Real Estate Trust ("HJIRET"), which she created; for approximately five months, this deed was not recorded. Dermenjian Aff. ¶ 8; PSUF ¶ 2 & Pls. Ex. F. Ten months later, on January 19, 2017, Dermenjian, acting as the HJIRET trustee, quitclaimed what had been Harry Jeranian's portion of the Real Estate again, this time to herself and David Jeranian as tenants-in-common. Pls. Ex. F at 3-6. The record is devoid of any suggestion that Harry Jeranian informed his business associates (Frank North and David Jeranian) that he intended to alienate the Real Estate at the same time that it was being marketed by Rodman pursuant to an exclusive listing agreement that

---

[6] Harry Jeranian, the father of Plaintiff Jeranian and Defendant Dermenjian, is referred to as "Harry Jeranian" or "Harry." His son is referred to as "Jeranian" or "David Jeranian."

3

he had signed. Five days after she quitclaimed what had been her father's interest in the Real Estate to herself and her brother, on January 24, 2017, she sent her brother copies of the documents evidencing what she had done. DSUF ¶¶ 21-22.

Meanwhile, it is undisputed that Rodman continued to market the Real Estate[7] and finally procured an offer in early 2017 from O'Reilly; and in June 2017, O'Reilly signed a Purchase Contract that accurately reflected the respective ownership interests of the three owners. PSUF ¶ 11 & Pls. Ex. E ("Purchase Contract"); DSDF ¶ 11. In the Purchase Contract, O'Reilly offered to pay cash in the amount of $795,000. Purchase Contract § 2. The Purchase Contract was not signed by the three owners before it expired on June 28, 2017. PSUF ¶ 12. In reaction, Jeranian, acting as executor of his father's estate filed Jeranian, 17-340. At a hearing before the Court in that case, in direct response to the Court's question, Dermenjian's attorney represented that "his client was willing, along with the third party [North] and her brother, to sign the [Purchase Contract] for the sale." Jeranian, 17-340, ECF No. 14 at 20. It is undisputed that no such document was ever signed. In her disputed and undisputed facts, Dermenjian describes various offers that she had made, but all of them involve payment to her of more than her one-sixth share, resolution of unrelated disputes with her brother or a waiver of her obligation to pay her share of the costs of sale. See DSDF ¶ 16; DSUF ¶¶ 26-29.

Plaintiffs filed this partition action in Rhode Island Superior Court on October 17, 2018. After the action was filed, on November 6, 2018, Dermenjian acknowledged that "I have come to the necessary conclusion that proceeding together, as tenants in common, in a productive

---

[7] Dermenjian contends that Rodman lacked the authority to market what became her interest in the Real Estate as of March 2, 2016; indeed, sometime later, in July 2018, she advised Rodman, "if, and when, I decide to sell my interest in 1221 Post Rd., Property, I will retain my own realtor to represent me." DSDF ¶ 11 & ECF No. 43-20 ("Def. Ex. 18"). Whether she is legally right about Rodman's authority is not material. She does not dispute that, after months of negotiations, Rodman's efforts resulted in a Purchase Contract signed by O'Reilly in June 2017 to purchase the Real Estate for $795,000. DSDF ¶ 11.

manner, will inevitably result in futility[;]" she also confirmed her willingness to sell her one-sixth interest, albeit for a guaranteed sum that is substantially more than one-sixth of the O'Reilly offer, and which included nothing regarding the apportionment of the costs of sale. PSUF ¶ 13 & Pls. Ex. H. Dermenjian removed the case to this Court on December 3, 2018.

It is undisputed that, on December 14, 2018, at the request of Jeranian and North, Andolfo Appraisal Associates Inc. submitted an appraisal of the Real Estate opining that its "highest and best use" requires the "razing of the existing improvements." PSUF ¶¶ 17-18 & Pls. Ex. O. With the building valued as a tear-down, the fair market value was assessed as $804,000. PSUF ¶¶ 17-18 & Pls. Ex. O.[8] Meanwhile, the parties do not dispute that, in December 2018, Jeranian and North signed an extension to the Rodman exclusive listing agreement, but Dermenjian did not sign.[9] PSUF ¶ 14 & Pls. Ex. I. And it is undisputed that, after some back and forth, on December 31, 2018, O'Reilly sent an email stating: "[Rodman] can use our previous contract offer and let him know we are still interested." PSUF ¶ 14 & Pls. Ex. I at 5-8. Counsel for Jeranian and North contacted Dermenjian on January 9, 2019, inquiring whether she would consent to sale of the Real Estate to O'Reilly for $795,000, with costs of sale to be allocated by the Court. PSUF ¶ 14. As far as the record reveals, Dermenjian's only response is in her statement of disputed facts; she does not deny that she received this communication, but rather asserts that "Rodman had no right to market the Property . . . for sale

---

[8] While the existence of this appraisal is undisputed, Dermenjian disputes the accuracy of the valuation (pointing to evidence that the value is less) and the need to procure it. For example, the City of Warwick's tax valuation records indicate that as of December 31, 2017, the Real Estate had an assessed value of $358,700. PSUF ¶ 19 & Pls. Ex. O at 15. As to the value of the building, Dermenjian does not dispute the existence of various building code violation notices. PSUF ¶ 20 & Pls. Ex. G. Further, during the hearing on the motions for summary judgment, counsel for Jeranian and North represented that the O'Reilly offer contemplated that the building would be torn down. ECF No. 47 at 51. Dermenjian did not dispute the accuracy of this representation.

[9] Dermenjian emphasizes that her refusal to sign this document means that Rodman did not have the contractual right to represent her one-sixth share. DSDF ¶¶ 14-15. She contends that there should be a trial (by jury) regarding whether Rodman could act as a real estate broker in trying to revive the O'Reilly offer at the end of 2018.

without Dermenjian's signature on the real estate listing contract" and that the O'Reilly expression of continued interest is not a binding contract but is only an email.  DSDF ¶¶ 14-15.

During the hearing on the motions for summary judgment, Dermenjian advised the Court that she agrees that the Real Estate should be sold to O'Reilly for $795,000.  ECF No. 47 at 14, 16, 26-27, 36-40, 62.  She represented that her only quibble with the terms of Purchase Contract related to the environmental clause (§ 5(c)), which she questioned because she said she does not know if it is the best that could be negotiated, although she also advised the Court that she had done nothing about this concern in that she has not consulted a real estate expert, as well as that she has no basis for questioning the clause except for her memory that, prior to 1985, a dental office had been operated on the Real Estate.  ECF No. 47 at 22, 28-30, 36-38.[10]  Otherwise, she emphasized that "my purpose would not be to have the O'Reilly go away."  Id. at 62.

After the hearing on the motion for summary judgment, on November 4, 2019, Jeranian and North responded to the Court's Order directing them to make a supplemental filing regarding the precise contours of partial judgment ordering partition by sale based on what is not disputed, including their position on a commissioner, a proposal for an attorney to be appointed as commissioner pursuant to R.I. Gen. Laws § 34-15-24, and a statement of the assignments that the Court should give to the commissioner, tailored to limit the expense of a commissioner by restricting his tasks to what is strictly necessary to get the Real Estate sold.  Jeranian and North complied, advancing a well-qualified attorney to be the commissioner and providing a specific proposal for an order that would authorize the commissioner to establish protocols to finalize the

---

[10] Mindful of her *pro se* status, the Court afforded Dermenjian additional time to explore the environmental clause and to advise the Court whether she was comfortable with it.  Text Order of Oct. 11, 2019; Amended Text Order of Oct. 28, 2019.  Acting with the assistance of counsel, she has since informed the Court that she consulted an expert, who advised that the environmental clause is "fairly straight forward," but suggested that the parties should explore whether O'Reilly might agree to fewer than 150 days for the due diligence period.  ECF No. 54-3 at 4.

6

terms of sale, with O'Reilly if possible, and to report back to the Court for instructions. ECF No. 51. In her response, Dermenjian makes no objection to the attorney proposed to be appointed as commissioner. ECF No. 52. Instead, she emphasizes a fact that is not disputed – that the O'Reilly email expressing interest is not a binding purchase contract and that it remains to be seen whether it will ripen into one consistent with the interest of the three owners. Id. at 1-2. In a statement that echoes the representation of her prior counsel to this Court in 2017 (see ECF No. 53 at 8), she argues that the Court should not enter partial judgment because "the sellers can work out any issues or differences either directly amongst themselves, or through counsel." ECF No. 52 at 2. She states that, despite her differences with Rodman in the past, she is prepared to agree that it can perform some of the tasks of a commissioner so that the appointment of a commissioner is unnecessary. Finally, she contends that the statutory scheme (R.I. Gen. Laws § 34-15-24) prohibits the Court from entertaining a motion to appoint a commissioner until after it has entered judgment ordering partition by sale. Inconsistent with her assertion that judgment of partition by sale is unnecessary, she acknowledges that the parties will not be able to agree on the apportionment of the costs of the sale. ECF No. 52 at 2.

It is undisputed that the delay in the sale of the Real Estate has adversely affected the surrounding community in that the building has been deteriorating. It is also undisputed that the delay has adversely affected Plaintiff Frank North, who was one of the three original investors in the Real Estate and who worked on its premises for many years. The undisputed facts establish that North is now 83 years old and has been retired since 2016; since 2017, he has suffered from compromised health and has been living in Florida with his wife. ECF No. 32-3 ¶¶ 1, 5. North wants the Real Estate to be sold so that he can use the proceeds to support himself and his wife in their retirement. Id. ¶ 11.

7

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and declarations show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a fact finder could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The evidence must be in a form that permits the court to conclude that it will be admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). The nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). Because this is a diversity case, Rhode Island law provides the substantive rules of decision. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

Under Rhode Island law, partition of real estate is governed by statute. Bianchini v. Bianchini, 68 A.2d 59, 61 (R.I. 1949). Section 34-15-1 of the Rhode Island General Laws

provides that, "[a]ll . . . tenants in common . . . may be compelled to make partition between them of those lands, tenements, and hereditaments by civil action." The procedure for partition is set out in R.I. Gen. Laws § 34-15-16:

> In an action for partition, the superior court may, in its discretion, upon motion of any party to the action, order the whole premises sought to be divided, or any particular lot, portion, or tract thereof or the interest of the plaintiff or plaintiffs or of the defendant or defendants in the whole premises, or in any particular lot, portion, or tract thereof, to be sold, either at public auction or by private contract, under the direction of the court, by the commissioner or commissioners appointed to divide or sell the same; provided, that if the sale is made by private contract, it shall not be made for less than the sum fixed by the court in its decree authorizing the sale by private contract.

Section 34-15-16 will apply "only when a physical division of the property by metes and bounds is impracticable." Carpenter v. Carpenter, No. WC 2008-0819, 2009 WL 3444654, at *7 (R.I. Super. Oct. 23, 2009). "While the statute provides the mechanisms for such sales, it does not establish the criteria for the partition, but for an exercise of the court's discretion." Pimental v. Costa, No. 06-1197, 2008 WL 1699272 (R.I. Super. Feb. 20, 2008). The statute's grant of discretion "should be exercised with caution, and mindful of the rights of all owners." Id. A petition for partition "is addressed to the sound judicial discretion of the trial justice who is required to consider all facts and circumstances in evidence before granting partition." De Bartolo v. Di Battista, 367 A.2d 701, 703 (R.I. 1976); Flori v. Bolster, No. C.A. PC/03-6151, 2006 WL 1073423, at *4 (R.I. Super. Apr. 18, 2006). Being an equitable proceeding, there is no right to a jury trial. Tinney v. Tinney, 770 A.2d 420, 437 (R.I. 2001).

In recognition that the Court itself cannot market and implement the sale of real estate, § 34-15-16 directs the Court to order the sale of the premises under the Court's direction "by the commissioner or commissioners appointed to . . . sell the same." Section 34-15-24 amplifies on the "[a]ppointment of persons to make partition." It provides that, "after judgment for partition

9

has been entered, the superior court on motion shall appoint and commission one or more discreet, impartial, and disinterested persons to make partition pursuant to such judgment, who shall be sworn to the faithful discharge of their trust." Id. The Court's discretion with respect to a commissioner includes the power to assign specific tasks to the commissioner or to limit the commissioner's functions. See, e.g., Carpenter, 2009 WL 3444654, at *8 ("This Court shall appoint a commissioner pursuant to G.L. 1956 § 34-15-24 to appraise the current value of the property and to facilitate the private sale of Plaintiff's interest to the Defendants. . . . This Court shall direct the commissioner appointed to oversee the partition of Plaintiff's ownership interest to also make findings as to whether the Defendants are indebted to Plaintiff for income and profits derived from the operation of Carpenter Farm."); Bissonnette v. Ventura, No. Civ.A. PC 02-3437, 2004 WL 2821652, at *4 (R.I. Super. Nov. 22, 2004) ("A commissioner shall be appointed to appraise the current value of the property, and to oversee the private sale of Bissonnette's interest to Ventura; but not to actually sell the property to third parties."). The Court may direct the parties to confer on who should be commissioner. Leite v. Pimental, No. 2003-3175, 2010 WL 354406, at *7 (R.I. Super. Jan. 25, 2010). Before making partition, the appointed commissioner must first give reasonable notice to the respective parties. R.I. Gen. Laws § 34-15-25. Once the Court's assigned tasks are completed, the commissioner(s) "shall report their proceedings . . . to the court by which they have been appointed, and if no sufficient cause is shown for rejecting the report, judgment shall be rendered thereon in conformity thereto, and the report . . . shall be recorded in the records of land evidence in the town." R.I. Gen. Laws § 34-15-27.

After the sale has been consummated and the proceeds are paid into the registry or are held in escrow, the Court's last responsibility is the apportionment of costs. R.I. Gen. Laws §

34-15-22. In so doing, the Court must be guided by what is "equitable and just, . . . by dividing the costs equally or subjecting either party to the payment of the whole or any part thereof." Id. In a partition action, "costs" includes attorney's fees. Moore v. Ballard, 914 A.2d 487, 489 (R.I. 2007) ("The term 'costs' in a partition action, however, has long been interpreted as including attorney's fees."). The fee award should be based on whether the work was for the benefit of all parties; a party who contests partition is generally not entitled to counsel fees. Carpenter, 2009 WL 3444654, at *9. The fees and expenses of the commissioner's services are also properly assessable as costs of a partition suit. Id. at *8-9. After all costs are allocated, final judgment may enter. Id.

## III. RECOMMENDATION

The undisputed evidence establishes that the parties concur that the correct persons are joined in this action and that all parties agree that the Real Estate should be sold;[11] yet, despite this seeming convergence, they have been unable even to get the Rodman listing agreement signed, and have been unable to get the Real Estate sold either during the period when O'Reilly was bound by its signed Purchase Contract or at any time since. Under such circumstances, partial summary judgment for partition is appropriate. Id.; see Pimental, 2008 WL 1699272 (when parties agree on need to sell, but disagree on how to manage property or how to divide proceeds, court should order partition). Dermenjian argues that partition is not necessary because she has never opposed the sale of the Real Estate. However, she has failed to present any evidence showing her acquiescence to doing what is necessary to get the sale consummated without judicial intervention. Rather, although her opposition to Plaintiffs' motion for summary

---

[11] No party asks for the Court to partition in kind, dividing the property by metes and bounds, and I do not recommend it because I find it would be impracticable. Carpenter, 2009 WL 3444654, at *7-8; Bissonnette, 2004 WL 2821652, at *2.

judgment stridently claims that she has made offer after offer, the Court has carefully reviewed her submissions; they establish only that her willingness to agree was consistently contingent on the agreement of her brother and Frank North to pay her more than her share of proceeds. Her post-hearing filing (ECF No. 52) argues that partition is not necessary yet also makes clear that the parties will never agree on the allocation of the proceeds of sale. Based on these undisputed facts, I recommend that the Court forthwith enter partial judgment for partition by sale of the Real Estate.

The other matter that may (and should) be addressed now is the appointment of a commissioner pursuant to R.I. Gen. Laws § 34-15-24. Based on the parties' recent submissions, it is undisputed that Attorney John A. Dorsey, proposed by Jeranian and North to serve as commissioner, with no objection to his credentials by Dermenjian, is well qualified and "discreet, impartial, and disinterested." Id. In light of the undisputed facts establishing that these parties have been unable to get the Real Estate sold, including that they have been unable to enter into a listing agreement with Rodman, unable to enter into a binding purchase contract with O'Reilly and unable to agree on the allocation of the costs of sale, I recommend that the Court find that a commissioner is essential to make partition in this case.

To implement this recommendation, immediately upon the entry of partial judgment for partition by sale, any party can make a motion for appointment of a commissioner.[12] Upon the making of such a motion, I recommend that the Court should appoint and commission Attorney John A. Dorsey to make partition and order that he shall appear before a judicial officer of this

---

[12] Dermenjian's post-hearing submission correctly points out that R.I. Gen. Laws § 34-15-24 appears to contemplate that partial judgment for partition must be entered before the Court may entertain a motion for appointment of a commissioner. This awkward sequencing seems inconsistent with R.I. Gen. Laws § 34-15-16, which provides that, on motion for partition, court may order real estate to be sold by the commissioner appointed to sell it. Nevertheless, in light of the language in R.I. Gen. Laws § 34-15-24, I recommend the Court proceed as described in the text.

Court and be sworn to the faithful discharge of this trust. I further recommend that the Court order that the commissioner and his staff shall be compensated for their services from the proceeds of the partition pursuant to R.I. Gen. Laws § 34-15-22 in accordance with the fees set forth in his memorandum (ECF No. 51-2 at 3).

For the initial tasks to be performed by the commissioner, I recommend that the Court order that the commissioner carry out the functions listed below. However, mindful of Dermenjian's recent representation that she is now prepared to authorize Rodman to proceed to engage in negotiations with O'Reilly, I also recommend that the Court structure the appointment of the commissioner to avoid unnecessary expenses to the extent that the parties are able to reach agreement.[13] To achieve this goal, I recommend that the Court order that, in advance of performing any assigned task, the commissioner shall provide notice to the parties and, if the parties have reached an agreement that satisfies the commissioner (in his discretion) that the assigned task is not necessary, he shall not perform it and the parties shall not be charged for his services in connection with it, except for the work required to conclude that the aspect of the task is not necessary. I further recommend that the Court order that all parties must fully and completely cooperate with the commissioner in connection with his performance of the Court's tasks, including to afford him such access to the Real Estate as he may request and to make timely and complete response to his inquiries.

The specific functions that I recommend as the preliminary assignments for the commissioner are as follows:

---

[13] For example, if the parties are able to sign the listing agreement authorizing Rodman to act as real estate agent, there is no need for a commissioner to sign a listing agreement; if the parties are able to sign a purchase contract with O'Reilly, there is no need for a commissioner to become involved with that negotiation or to petition the Court for leave to sign a purchase contract. On the other hand, if the parties are unable to agree, the commissioner must use his judgment and petition the Court for instructions regarding how to proceed; the Court will then authorize him to sign, binding the parties to a purchase contract despite their failure to agree.

13

1. The commissioner shall conduct an up-to-date document/title review and physical assessment of the Real Estate. To the extent that the commissioner concludes that there are any other interested parties than those already before the Court, he shall report to the Court and await instructions. To the extent he concludes that there is risk of imminent harm to the interests of the parties arising from their interests in the Real Estate, he shall report to the Court and await instructions.

2. The commissioner shall investigate what procedures and protocols are in the best interests of the parties with respect to the sale of the Real Estate, including whether a broker should be engaged, whether it remains possible to sell the Real Estate to O'Reilly pursuant to the terms of the 2017 Purchase Contract or pursuant to such other terms as the commissioner concludes are favorable to the parties, or whether the Real Estate must be marketed again and a sale to some other person or entity must be negotiated. Within thirty days (or sooner if possible) following the Court's granting of the motion for appointment of commissioner, the commissioner shall file a report setting forth his recommendations regarding the establishment of a protocol to advance the sale and shall petition the Court for further instructions regarding the same. In performing this task, the commissioner must confer with the parties but is not bound by their instructions.

3. After the protocol to advance the sale is established, the Court will assign further tasks to the commissioner towards the goal of making partition.

As to Dermenjian's cross-motion for summary judgment, I recommend the Court deny the motion. Based on my recommendation that the Court exercise its discretion not to entertain Dermenjian's counterclaims in this case, the cross-motion's attempt to relitigate and have a jury

trial on claims related to <u>Jeranian</u>, 17-340, is misplaced. Dermenjian's only other argument – that partition is not necessary because she does not oppose the sale to O'Reilly – fails because, as shown above, while the parties may hotly dispute who is at fault, the undisputed evidence is crystal clear: it establishes that, since 2017, the parties have not been able to consummate the sale of the Real Estate despite the concurrence of all three owners that it should be sold, the deteriorating condition of the building and the apparent availability of a buyer. These circumstances warrant a court-ordered partition by sale.

## IV. CONCLUSION

Based on the foregoing, I recommend that the Court grant in part Plaintiffs' motion (ECF No. 32) for summary judgment insofar as the Court finds that partition by sale is necessary and, subject to the making of the appropriate motion, that a commissioner must be appointed pursuant to R.I. Gen. Laws § 34-15-24 to oversee and complete the sale of the Real Estate. This recommendation is for partial judgment because significant work remains before final judgment may enter, including the Court's review and instructions arising from the commissioner's report under R.I. Gen. Laws § 34-15-27 and the allocation of costs as directed in § 34-15-22. I do not recommend that the balance of the relief sought by Plaintiffs' motion be denied; rather, I suggest that the Court should either hold the motion under advisement subject to further order of the Court or deny the remainder without prejudice with leave for Plaintiffs to make further dispositive motion(s) as matters become ripe for resolution. Finally, I recommend that the Court deny Defendant's cross-motion (ECF No. 34) for summary judgment.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes

waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 19, 2019