UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID S. JERANIAN and | : | |
| FRANK NORTH, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 18-652JJM |
| | : | |
| JOYCE A. DERMENJIAN, f/k/a | : | |
| JOYCE A. JERANIAN | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In this acrimonious equitable partition action to sell certain commercial Real Estate (located at 1221 Post Road, Warwick Rhode Island), the Court-appointed Commissioner, John A. Dorsey, Esq., ("Commissioner"), acting pursuant to the Court's instructions, has overcome an array of obstacles and succeeded in closing the court-approved sale of the Real Estate; he now has the net sale proceeds in hand.  The Commissioner's success in accomplishing this goal is the more laudatory because the Real Estate's owners had been unable achieve a sale without court-assistance despite having a potential purchaser in the wings since at least 2017.

The case is now ripe to proceed to its next phase: pending before the Court is the Commissioner's motion (ECF No. 83) for approval of his Post-Closing Report ("Report").  The Commissioner seeks approval, confirmation and ratification of all of his "acts and doings," ECF No. 83 at 9, as of the filing date of the Report; and for approval of his legal fees ($40,487) and out-of-pocket expenses ($238.05), as well as for authorization to pay these fees and expenses out

of the net proceeds ($740,080.54) arising from the sale of the Real Estate.[1]  ECF No. 83 at 9, 37, 39.  To efficiently close out the partition proceeding without the need for further motion practice, the Commissioner also asks the Court to authorize him to reserve and pay up to $2500 to cover any close-out legal fees and/or out-of-pocket expenses in connection with the sale of the Real Estate or these proceedings.  Id. at 8.  Plaintiffs David Jeranian and Frank North, who collectively were the owners of five-sixths of the Real Estate, have no objection to the granting of all of the relief sought by the Commissioner.  Defendant Joyce Dermenjian, who became the owner of one-sixth of the Real Estate through a series of transactions that she engineered just prior to and after the death of her and David Jeranian's father, Harry Jeranian, objects to the Commissioner's fee request, arguing that only a portion of his work was of common benefit to the Real Estate.  She contends that a fee of between $22,268 and $26,317 is the most that is reasonable.  ECF No. 84 at 2.

The Commissioner's motion has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    Background**

During the early phase of this case, the Court issued two opinions, based largely on facts derived from Joyce Dermenjian's *pro se* filings supported by her affidavit swearing to the truth of her factual statements.  Jeranian v. Dermenjian, C.A. No. 18-652JJM, 2019 WL 6117991, at *1-2 (D.R.I. Nov. 15, 2019), adopted by Text Order (D.R.I. Dec. 2, 2019); Jeranian v. Dermenjian, C.A. No. 18-652JJM, 2019 WL 6134691, at *2 (D.R.I. Nov. 19, 2019); adopted in

---

[1] The Commissioner's motion also asked the Court for approval of the payment of a real estate commission in the amount of $39,750 to Rodman Real Estate, Inc. ("Rodman").  Based on the parties' stipulation of December 23, 2021 (ECF No. 87), this aspect of the motion was resolved by the Court's Text Order of December 28, 2021.

pertinent part, 2019 WL 7282018 (D.R.I. Dec. 27, 2019).  These are largely the source of the procedural and factual background that follows.

    a.    **Procedural Background**

After David Jeranian and Frank North filed this equitable partition action, Joyce Dermenjian, then *pro se*, answered by admitting that partition and sale of the Real Estate should proceed, but also by asserting counterclaims/corrected counterclaims/amended corrected counterclaims and third-party claims, as well as by propounding discovery requests, moving to compel discovery and for an emergency stay.  Jeranian, 2019 WL 6117991, at *1-6; ECF No. 31.  The Court granted the Jeranian/North motion to dismiss all of her claims, finding that the claims against her brother and Frank North failed to state a claim; the claims against Frank North bordered on frivolous (with an accompanying caution); and permissive joinder of David Jeranian in his capacity as executor of the Estate of Harry Jeranian was contrary to judicial economy and the equitable principles implicated by a partition action.  Id. at *7-11.  Rather than continuing the delay that Ms. Dermenjian claimed to abhor, yet sought to perpetuate by her filings, the Court exercised its discretion to manage its dockets by dismissing all counterclaims and attempted third-party claims without prejudice.  Id. at *9-11.  On the merits, the Court addressed the parties' cross motions for summary judgment, granting the Jeranian/North summary judgment in part (ordering the partition to proceed) and denying Ms. Dermenjian's motion.  Jeranian, 2019 WL 6134691, at *6-8.

    b.    **Factual Background**

This equitable partition action was brought pursuant to R.I. Gen. Laws § 34-15-1 and § 34-15-16, *et seq.*, by Plaintiffs, who are two (David Jeranian, owner of one-half, and Frank North, owner of one-third) of the three owners of the Real Estate against Defendant, the third

owner (Joyce Dermenjian, owner of one-sixth) so that they could consummate its sale to O'Reilly Automotive Stores, Inc. ("O'Reilly") or another buyer if O'Reilly declined to proceed. Jeranian, 2019 WL 6117991, at *1.

Prior to the death of Ms. Dermenjian and David's father, Harry Jeranian, the Real Estate had been owned equally and used for twenty years by Harry Jeranian, David Jeranian and Frank North to run their insurance business. Jeranian, 2019 WL 6134691, at *2. In 2014, the three owners decided to wind down the business and sell the Real Estate. All three signed an exclusive listing agreement with Rodman, a commercial real estate broker. Id. However, as of 2016, the Real Estate had not been sold. Id.

Joyce Dermenjian and David Jeranian are siblings and the children of Harry Jeranian. The acrimony between brother and sister related to their father's property before and after his death has been the subject of "years of vitriolic litigation," in the state courts and this Court. Jeranian, 2019 WL 6117991, at *1. Ms. Dermenjian was the holder of Harry Jeranian's power of attorney. Jeranian, 2019 WL 6134691, at *2. On March 18, 2016, less than four weeks before Harry Jeranian died, she used this power of attorney to quitclaim Harry's one-third interest in the Real Estate to herself as trustee of a trust that she had created. Id. Despite Ms. Dermenjian's extensive *pro se* filings during the early phase of this case, there is no suggestion that Harry Jeranian or anyone acting for him told his long-time business associates (Frank North and his son, David Jeranian) that he had conveyed his interest in the Real Estate to his daughter as trustee. Id. Nor for five months did Ms. Dermenjian record the deed she had signed. Id. Then, on January 19, 2017, acting as trustee of the trust she created, Ms. Dermenjian quitclaimed what had been Harry's portion of the Real Estate again, this time to herself and her brother as tenants-

4

in-common.  Id.  Five days after this quitclaim deed, on January 24, 2017, she sent her brother copies of documents evidencing what she had done.  Id.

Meanwhile, in early 2017, Rodman was able to procure an offer for the Real Estate from O'Reilly; in June 2017, O'Reilly signed a Purchase Contract but it expired unsigned on June 28, 2017.  Id.  In an attempt to resurrect the sale to O'Reilly, on July 19, 2017, David Jeranian, acting as executor of his father's estate, filed Jeranian v. Dermenjian, C.A. No. 17-340JJM-LDA ("Jeranian, 17-340").  Jeranian, 2019 WL 6117991, at *2-4.  The Court dismissed this case four months after it was filed due to the Harry Jeranian Estate's lack of any interest in the Real Estate.  Id. at *4.  The Court left open David Jeranian's right on behalf of the Estate to pursue Ms. Dermenjian for breach of fiduciary duty or fraud based on the actions she took in conveying the Real Estate just before Harry Jeranian's death.  Id.  During the Court's hearing on this motion to dismiss on October 30, 2017, Ms. Dermenjian's prior attorney, represented that "his client was willing, along with the third party [North] and her brother, to sign the [Purchase Contract] for the sale."  Jeranian, 2019 WL 6134691, at *2 (internal quotation marks omitted); Jeranian, C.A. No. 17-340-JJM-LDA, ECF No. 14 at 20.  The Court subsequently found that the facts presented by Ms. Dermenjian in support of her motion for summary judgment establish that this purported willingness was a smokescreen premised on benefits to her beyond a one-sixth share of the net sale proceeds after payment of Rodman's commission.[2]  Jeranian, 2019 WL 6134691, at *2 & n.7.

---

[2] Ms. Dermenjian's many *pro se* filings and presentations to the Court during the early phase of this case reflect her dealings with Rodman, including her refusal to extend Rodman's listing agreement and her view that Rodman lacked the authority to market the Real Estate and was not entitled to a commission from her share despite Rodman having procured the 2017 Purchase Agreement with O'Reilly.  Jeranian, 2019 WL 6134691, at *2 & n.7.  Her filings regarding Rodman are part of the foundation for the Court's finding that the commissioner had to be an attorney at hourly rates capped at $275, and not another real estate broker at the hourly rate of $50.  See ECF No. 64 at 1.

5

After months of not moving any closer to a sale, with Joyce Dermenjian refusing to sign a renewed listing agreement with Rodman, in October 2018, David Jeranian and Frank North filed this partition action in Rhode Island Superior Court; Joyce Dermenjian removed it to this Court on December 3, 2018.  ECF Nos. 1; 84 at 1-2.  In their complaint, Plaintiffs alleged (accurately as subsequent events confirmed) that the buyer procured by Rodman (O'Reilly) remained interested in buying the Real Estate.  ECF No. 1-1 ¶ 12.  Based on the undisputed facts presented by the parties, on December 27, 2019, the Court found partition by sale to be necessary and granted the Jeranian/North motion for partial judgment for partition by sale of the Real Estate under R.I. Gen. Laws § 34-15-16.  Jeranian, 2019 WL 7282018, at *1.  The Court held that, "[c]onsidering the history of delay in selling the Real Estate," the appointment of a commissioner "is essential to make the partition in this matter" and such a commissioner would be compensated for the service from the proceeds of the partition pursuant to R.I. Gen. Laws § 34-15-22.  Id.  The Court ordered that any party might seek such an appointment by motion.  Id.

On December 30, 2019, David Jeranian and Frank North moved for the appointment of Attorney John A. Dorsey to be the commissioner, based on the hourly rates that he is now seeking to charge.  ECF No. 60.  While not disputing "the qualifications of Attorney Dorsey and his law firm," Joyce Dermenjian countered with her motion for appointment of a real estate agent with no legal training willing to work for $50 per hour (but who Ms. Dermenjian conceded would have to seek further court approval for the hiring of an attorney for any legal work that might be needed).  ECF No. 62.  In support, she argued that there would be "minimal need for actual legal work."  Id. at 3.  She also argued (correctly) that a partition commissioner does not have to be an attorney.  Id. at 2.  Nevertheless, on January 16, 2020, the Court ruled that, in the circumstances of this case:

> I find that the commissioner <u>needs to have the skill of an attorney</u> to be able to seek instructions from the Court and to advise the Court in connection with the discharge of his duties to the Court, as well as that there is already a real estate agent who has been involved with this real estate sale for many years so that the less expensive (on an hourly basis) choice of a non-attorney realtor is not only duplicative of expertise already available, but also does not provide the skill set that is clearly necessary to consummate a sale under the circumstances presented here.

ECF No. 64 at 1 (emphasis added).[3] The Court's Order of Appointment provides that the "[C]ommissioner's fees and expenses shall be paid from the proceeds of the sale of the [R]eal [E]state." Id. ¶ 4. Attorney John A. Dorsey was appointed as Commissioner; he accepted the Court's appointment and was sworn to the faithful discharge of his trust on January 29, 2020. The Court's Order of Instructions to the Commissioner issued the same day. ECF No. 67.

### c. Acts and Doings of the Commissioner

The Commissioner's first Interim Report was filed on April 30, 2020. ECF No. 71. It describes his actions in confirming the Real Estate's title, securing the Real Estate and commencing negotiations with O'Reilly for a new purchase agreement. Id. The Interim Report advised that the COVID-19 pandemic had already begun to have an adverse impact on the pace of proceedings. Id. Nevertheless, the Commissioner achieved early success in that, on May 13, 2020, the Court authorized him to enter into the 2020 Purchase Agreement with O'Reilly. See Text Order of May 13, 2020.

The transaction next entered what turned out to be a prolonged and difficult period of due diligence, complicated significantly by the ongoing COVID-19 pandemic. The Court held conferences on October 15, 2020, November 19, 2020, May 20, 2021, and July 6, 2021. At the October 15, 2020, conference, the Commissioner advised the Court that the parties had been

---

[3] Joyce Dermenjian's objection (ECF No. 68) to this Order reiterated her contention that these circumstances present "little need for an attorney when there are no tasks to perform that require legal judgment if O'Reilly makes an offer that the parties accept." Id. at 2. The Court overruled this objection by Text Order dated February 3, 2020.

7

cooperative but that the due diligence proceedings (involving *inter alia* different departments within O'Reilly, environmental consultants, the municipality and the state) were complex. At the November 19, 2020, conference, the Commissioner reported that there had been delays with O'Reilly's efforts to procure necessary municipal and state approvals; he asked for authorization to execute an extension to the 2020 Purchase Agreement. ECF No. 73. With no objection from the parties, this petition was granted. Text Order of Nov. 20, 2020. As of May 2021, municipal approvals remained to be completed. The Court held another conference on May 20, 2021, and, with no objection from David Jeranian and Frank North, and an expression of concern, but no objection from Joyce Dermenjian, the Court approved a second extension to the 2020 Purchase Agreement. ECF No. 78; Text Order of May 21, 2021. Following a conference on July 6, 2021, a final extension was executed, with the proviso that no further extensions would be granted except based on good cause; the parties expressed frustration but no objection to the Court's approach. ECF No. 79; Text Order of July 8, 2021. On August 24, 2021, the Commissioner asked the Court to authorize the sale of the Real Estate with the proceeds to be deposited in a segregated bank account. ECF No. 80. This Order issued on August 25, 2021. Text Order of Aug. 25, 2021. Prior to the closing, the Commissioner experienced difficulties in obtaining executed closing documents from Joyce Dermenjian. ECF No. 85 ¶¶ 34-38. During the closing, he resolved what even Ms. Dermenjian has conceded were complicated issues.

The sale of the Real Estate to O'Reilly closed on or about October 13, 2021. ECF No. 83 ¶ 27. The net proceeds of $740,080.54 were deposited into a segregated bank account pending further order of the Court. Id. ¶ 28. On November 18, 2021, the Commissioner filed his Post-Closing Report ECF No. 83. It is thorough and clear. Attached to it are the Commissioner's

time records supporting his request for Court approval of out-of-pocket expenses of $238.05 and legal fees of $40,487 for work as of the filing of the Report. Id. at 37.

## II.   Standard of Review

Under Rhode Island law, partition of real estate is governed by statute. Jeranian, 2019 WL 6134691, at *4 (citing Bianchini v. Bianchini, 76 R.I. 30, 33, 68 A.2d 59, 61 (R.I. 1949)). In pertinent part, the law provides:

> In an action for partition, the superior court may, in its discretion, upon motion of any party to the action, order the whole premises sought to be divided . . . to be sold . . . under the direction of the court, by the commissioner or commissioners appointed to divide or sell the same . . . .

R.I. Gen. Laws § 34-15-16 (emphasis added). That is, the statute does not create detailed protocols, leaving that to the sound discretion of the court. Pimental v. Costa, No. 06-1197, 2008 WL 1699272 (R.I. Super. Ct. Feb. 20, 2008); see DeLisi v. Caito, 463 A.2d 167, 168 (R.I. 1983) (court has "broad discretionary power" under § 34-15-16). Section 34-15-24 addresses the "[a]ppointment of persons to make partition," providing that, "after judgment for partition has been entered, the superior court on motion shall appoint and commission one or more discreet, impartial, and disinterested persons to make partition pursuant to such judgment, who shall be sworn to the faithful discharge of their trust." R.I. Gen. Laws § 34-15-24. A partitioning court's discretion encompasses the deduction of "commissioner[']s fees to the parties" from the proceeds of the sale. Cheetham v Cheetham, No. C.A. 71-575, 1979 WL 196028, at *8 (R.I. Super Ct. July 16, 1979).

Section 34-15-24 was scrupulously followed in this case, in that the Commissioner is a court-appointed fiduciary who took an oath in open court regarding the faithful discharge of his trust. His assigned tasks being complete, he has "reported [his] proceedings . . . to the court by which [he has] been appointed" as required by R.I. Gen. Laws § 34-15-27. With the sale

9

consummated and the proceeds in escrow, the Court must now deploy its discretion to assess the appropriateness of his fees and expenses as costs of the partition suit.  Carpenter v. Carpenter, No. WC 2008-0819, 2009 WL 3444654, at *8-9 (R.I. Super. Ct. Oct. 23, 2009); see Barney v. Barney, 83 R.I. 182, 185, 114 A.2d 399, 401 (1955) (fees and expenses of commissioner are properly assessable as costs of partition).

In exercising this discretion, the Court should be guided by Rhode Island cases[4] dealing with compensation for a court-appointed fiduciary and may consider such factors as the amount of property involved, the questions of law to be dealt with, the actual labor performed, the result obtained, and the commissioner's qualifications, experience, standing and ability, as well as the degree to which the commissioner "has encountered many obstacles, many problems, many viscissitudes [sic] and many difficulties" in carrying out his duties.  Hodge v. Slate, No. 3710, 1976 WL 177010, at *1, 4 (R.I. Super. Ct. Apr. 5, 1976); cf. Howe v. Tarvezian, 894 N.E.2d 1173, 1175-76 (Mass. App. Ct. 2008) (under Massachusetts law, computation of commissioner's fee rests in sound discretion of trial judge, considering experience and specialization of commissioners; accomplishment of sale against various obstacles; itemization of services in submitted time sheets; and directly observable quality of work).  Once the fee is assessed, the Court may authorize its fiduciary to pay himself out of the funds "in his hands."  See Onorato v. Mancini, 66 R.I. 119, 121, 17 A.2d 867, 868 (1941).

---

[4] Long-standing equitable principles establish a Rhode Island trial court's inherent equitable authority to set compensation for its court-appointed fiduciary, such as a receiver, as an expense of the proceeding.  Woodward v. Providence Teaming Co. Inc., 71 R.I. 291, 295, 44 A.2d 550, 552 (1945) ("superior court is, in [setting compensation for receiver] . . . vested with a sound discretion that will not be disturbed . . . except for clear abuse of such discretion"); Barba v. Cassano, 163 A. 880, 880 (R.I. 1933) (per curiam) (receiver compensation rests in discretion of appointing court, decision will stand unless abuse of discretion).

**III.     Proposed Findings of Fact and Recommendations**

The Commissioner was presented to the Court as an extremely well-qualified attorney willing to accept court-appointment in consideration for the reasonable hourly rates of $275 per hour for himself and $225/$145 per hour respectively for an associate attorney and a paralegal, which he represented are consistent with his and his firm's rates as approved by the Rhode Island Superior and Municipal Courts for compensation for court-appointed fiduciaries. ECF No. 60-1. No party has argued that the Commissioner lacks the requisite qualifications, experience, standing and ability; nor at the time of the Commissioner's original appointment did any party take the position that these rates are unreasonable. Joyce Dermenjian's objection then was based on her argument that there would be "minimal need for actual legal work," so that a real estate agent willing to work for $50 per hour should be appointed despite the parties' inability to consummate the sale with the assistance of a real estate agent since at least 2017. ECF No. 62 at 3. The Court overruled this objection finding that, in the circumstances here, "the commissioner needs to have the skills of an attorney." ECF No. 64 at 1.

The correctness of this determination has now been amply confirmed by the Court's experience with these proceedings and the Commissioner's work. That is, I have closely supervised the partition over the two years since the Commissioner took his oath. While doing so, I have reviewed many iterations of his written work product; I have observed him during many conferences when he appeared and made presentations; and I have observed or been aware of his demeanor and calm professionalism in dealing with the parties (successfully deflecting and deescalating acrimony), with Rodman, with O'Reilly and with the many state and municipal officials whose approvals were required. Based on these observations, direct and indirect, I find that the Commissioner was eminently well qualified for this undertaking; that he performed the

11

Court's instructions impeccably; and that he ably and calmly maneuvered this difficult transaction past many obstacles, some anticipated (the legal issues that arose during due diligence and closing, as well as the practical challenge of keeping the transaction on track despite the issues created by the parties' adversarial postures), and some not anticipated (the COVID-19 pandemic and its impact on all involved, particularly the state and municipal officials whose approvals were essential). I also find that the Commissioner complied with the Court's assigned tasks and brought the partition to successful resolution without unjustified delay at the price originally set in 2017. I further find that the Commissioner's legal acumen, depth of experience and professional demeanor were essential to his ability to get that accomplished with minimal eruptions of the vitriol and animosity between the parties that had become so toxic prior to his appointment. Finally, I find that the Commissioner's legal judgments regarding how to execute the Court's instructions were consistently appropriate and that the legal services he performed were consistently necessary to achieve the success – the sale of the Real Estate to O'Reilly for the price agreed to in 2017 – he achieved on October 13, 2021, when the transaction closed.

      In light of these findings, it is the duty of the Court to set a reasonable fee to justly compensate the Commissioner for his outstanding work. As noted, in exercising its discretion, the Court may consider the value of the Real Estate, the complexity of the legal issues, the actual labor performed, the result obtained, and the Commissioner's qualifications, experience, standing and ability, as well as the degree to which the Commissioner "has encountered many obstacles, many problems, many viscissitudes [sic] and many difficulties" in carrying out his duties. Hodge, 1976 WL 177010, at *1.

In this instance, the result obtained and the Commissioner's qualifications, experience, standing and ability, as well as the appropriateness of his hourly rates (which the Court had already approved) support a finding that he should be paid in full for all actual and reasonably necessary work. As to the work actually performed, the Commissioner has submitted detailed time records, recorded using the time entry protocols[5] that are customary in the Rhode Island state courts for court-supervised sale proceedings. ECF No. 85 ¶ 18. As a cross check on reasonableness of the total fee in relation to the value of the Real Estate, the Commissioner appropriately points out that the total roughly approximates the amount of the real estate commission paid to Rodman. ECF No. 85 ¶ 7. The Court should also take note of the absence of objection from the owners of five-sixths of the Real Estate; in light of their far greater stake in this partition action, as well as their active engagement (through counsel) with the Commissioner at every step as he managed the transaction, their acquiescence to the total amount sought by the Commissioner is appropriate for the Court to consider.[6] Collectively, these factors augur strongly for approval of the Commissioner's requested fee.

In urging the Court nevertheless radically to reduce the Commissioner's fees, Joyce Dermenjian makes an array of arguments. I address each in turn.

---

[5] These time entries include detailed textual descriptions of activities performed on a specific day for each timekeeper, based on the "conventional approach," Pérez-Sosa v. Garland, No. 20-2083, 2022 WL 71663, at *11 (1st Cir. Jan. 7, 2022), of recording time in six-minute increments, with the total time spent by the timekeeper on a single day generally recorded in a single block. ECF No. 83. Having reviewed the entries closely, the Court observes that the activities listed for a single day by a single timekeeper are typically so closely related that they are appropriately viewed as a single task. The lengthy time entry describing actions performed by the Commissioner on the day of the closing illustrates the point – it lists many actions that boil down to a single task, preparing for and closing the sale and advising the parties that it had been done.

[6] Joyce Dermenjian argues somewhat illogically that their "lightning-fast" approval of the Commissioner's Report and fee request is based on their hope that the Court might allocate all of the Commissioner's fee to Ms. Dermenjian's share of the proceeds. I do not credit this argument.

First, Joyce Dermenjian attacks the Commissioner's billing protocol as improper "block billing." ECF No. 84 at 3. In support, she relies on Gempp v. The Preservation Soc. of Newport County, No. NC-2016-0406, 2020 WL 3071580 (R.I. Super. Ct. June 04, 2020), as well as other cases that deal with a prevailing party fee award to counsel, not with the appropriate compensation for a court-appointed fiduciary. Gempp does not advance her cause. In Gempp, the court was struggling with a prevailing party application seeking fees close to double the amount of a jury award based on non-contemporaneous time records that made it impossible for the court to eliminate time spent on several claims that were not ultimately successful by "lump[ing] together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Id. at *5 (internal quotation marks omitted); Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 253 (D. Mass. 2011) (block billing, defined as lumping together total daily time spent working on case, rather than itemizing by specific tasks, is disfavored because it requires judicial deciphering to tease out tasks appropriate for prevailing party fee award). As noted, while the Commissioner generally made one time entry per day for each timekeeper, the Court finds that these entries do not appear to lump unrelated tasks into a single "block," which Gempp condemned. See n.5, *supra*. Nor does the Court find that the Commissioner's extremely clear time records need to be parsed by task. Nor is this a case like Gempp where the total amount sought lacked overall indicia of reasonableness. Based on the foregoing, I find that the Commissioner's adoption of the protocol for presentation that has been endorsed by the Rhode Island Superior Court for comparable court-appointed fiduciaries is appropriate and the Commissioner's time does not require any reduction due to so-called "block billing."

Second, Joyce Dermenjian contends that the Court should divide the Commissioner's work into "core" and "non-core tasks," again in reliance on Gempp, in which the court was concerned that, due to block billing and the comingling of what it deemed to be core litigation tasks and non-core tasks performed by non-lead attorneys, it was impossible to ascertain the amount of time spent on unsuccessful claims. Gempp, 2020 WL 3071580, at *10; see ECF No. 84 at 4. As the First Circuit noted most recently in Pérez-Sosa, 2022 WL 71663, at *9, it is not inappropriate for a court dealing with a lodestar calculation for a prevailing party fee award for work on litigation to set two hourly rates for a particular attorney, one for what the court classifies as core work and the other for what it considers to be non-core work. Pérez-Sosa does not hold that such a time-consuming bifurcation is mandated or even appropriate for a non-litigation project like this one. Fatal to this argument is the reality that the Court approved the hourly rates for the Commissioner and his associates/paralegals in advance of his acceptance of the appointment; this Order did not direct the use of a core/non-core approach. I find no reason to impose this core/non-core construct in hindsight in the circumstances of this case and do not recommend any reduction based on the Commissioner's failure to adopt it.

Third, Joyce Dermenjian argues that certain time entries reflect excessive time for the described task; in support she points to two instances where the Commissioner billed twelve minutes for a brief email, two instances where an associate was deployed to pick up or deliver documents (and complains that one such trip took twenty-four minutes despite Google maps showing six minutes for the door-to-door roundtrip drive), and several instances where the Commissioner (or one of his associates) traveled to the Real Estate to perform a task that Joyce Dermenjian claims she could have done if asked. ECF No. 84 at 5-9. These nits may be given

15

short shrift. The Commissioner has explained each in more than sufficient detail.[7] I do not find these time entries to be troublesome and do not recommend any reduction based on them.

Fourth, Joyce Dermenjian attacks the Commissioner for "T[aking] Positions that Added Additional Costs to the Sale." ECF No. 84 at 10. She illustrates her argument with a critique of what I find to be the Commissioner's skillful management of a sorry episode involving an affidavit that puts Ms. Dermenjian herself in a bad light. As credibly explained by the Commissioner, it was the title company (not the Commissioner) that asked for what is normally a form affidavit from the parties averring that the Real Estate's title had never been disputed and that no actions or proceedings were currently pending. When the Commissioner presented the title company's form, Joyce Dermenjian was outraged that the Commissioner had asked her to sign an inaccurate document because he lacked familiarity with the convoluted litigation history between herself and her brother. ECF No. 85 ¶ 37. Also troubling is that she countered with a substitute draft that proposed to add potentially vituperative details that the Commissioner has opined could well have jeopardized the sale. Id. ¶ 38. Despite this obstacle, the Commissioner marshaled his legal acumen and years of experience and was successful in producing a draft acceptable to the title company that Joyce Dermenjian signed. Far from generating an unnecessary expenditure of attorney time, I find that this episode reflects work that was essential and that required not just the negotiating and drafting skills of an attorney, but also the depth of experience and demeanor of the Commissioner; therefore, I find that full compensation for the

---

[7] What I do find to be troubling is the Commissioner's credible explanation for some of the time entries that Joyce Dermenjian has challenged in that they reflect the Commissioner's difficulty in dealing with Ms. Dermenjian's obstructive conduct. That is, the Commissioner made the reasonable judgment that he had to use an associate for pickup and delivery of time-sensitive documents essential to the closing because of difficulties in obtaining executed closing documents from Ms. Dermenjian. ECF No. 85 ¶¶ 34-36. In that regard, the Commissioner has advised the Court that, as of December 9, 2021, he had still not received from Ms. Dermenjian a 1099 form, which she failed to provide pre-closing (and he had persuaded O'Reilly to wait for). Id. ¶ 36 n.3. I observe that such petty hindrances appear to breach the Court's caution to the parties in the Order of Instructions of January 29, 2020. ECF No. 67 ¶ 8.

Commissioner's time spent to remove this barrier to the successful sale of the Real Estate is entirely appropriate. I recommend that Joyce Dermenjian's objection to the time the Commissioner was required to invest in developing an affidavit acceptable to the title company should be overruled.

Finally, Joyce Dermenjian contends that the fee request is facially unreasonable because the entire proceeding should have been a simple matter with only one parcel to be sold and the buyer (O'Reilly) already identified. ECF No. 84 at 9. Fundamentally, this argument seeks to relitigate the Court's rulings of 2019 and 2020 that a court-supervised partition was essential to get the Real Estate sold and that the circumstances were sufficiently complex and difficult that a commissioner with the skills and experience of Mr. Dorsey was required. The argument clashes with the reality of the parties' inability to consummate the sale until the Commissioner was appointed. Consideration of this argument compels the Court to focus on the stark contrast between Ms. Dermenjian's words, for example to this Court in 2017 that she was ready to take the actions necessary for the Real Estate promptly to be sold, and her deeds, for example, her 2019 *pro se* filings in this Court aimed at delaying or preventing a sale. While Ms. Dermenjian is correct that the Court directed the Commissioner to sell for "the best price and terms reasonably available with as little collateral expense and delay as reasonably possible," ECF No. 67 ¶ A, she omits that the Commissioner brought each extension of the Purchase Agreement to the Court's attention, the Court conducted remote[8] conferences at which she was represented by able counsel (and signed-on herself), yet, each time, she presented no objection to his "doings" and acquiesced to his proposed course.

---

[8] Most of these proceedings were conducted during the COVID-19 pandemic and, after the Commissioner was appointed in open court, all conferences were conducted remotely and attended by all counsel and Joyce Dermenjian.

17

Based on my oversight of these proceedings (and with due consideration to what I find to be Ms. Dermenjian's unavailing argument that the sale could have closed in dramatically less time with dramatically less expense), I find that the Commissioner consistently conducted his duties in a manner that fully complied with the Court's directive to proceed with "as little collateral expense and delay as reasonably possible." ECF No. 67 ¶ A. Further, as noted above, I find that the Commissioner's total fee request, viewed holistically as Joyce Dermenjian suggests, is eminently reasonable in light of the value of the Real Estate and the many obstacles and difficulties the Commissioner had to overcome. Importantly, this finding is corroborated by the absence of objection from David Jeranian and Frank North. Therefore, I recommend that the Court overrule Joyce Dermenjian's objection to the total time invested in what she now claims "should have been a simple sale," ECF No. 84 at 10, and exercise its discretion to compensate the Commissioner in full for all of his work, which I find to have been necessary and consistent with the discharge of the trust invested in him by the Court.

## IV. Conclusion

Based on the foregoing, I recommend that the Court approve the Commissioner's Post-Closing Report and approve, confirm and ratify all of the Commissioner's acts and doings as of the filing date (November 18, 2021) of the Report; that the Court approve the immediate payment to the Commissioner out of the proceeds currently "in hand" for all of his out-of-pocket expenses ($238.05), to which no party has objected; and that the Court approve the immediate payment to the Commissioner out of the proceeds currently "in hand" of his reasonable legal fees ($40,487). ECF No. 83 at 37. I further recommend that the Court grant the Commissioner's request for flexibility in closing out the partition and authorize him to reserve and pay up to $2500 for additional attorney's fees and expenses (including time and expenses to address Ms.

Dermenjian's opposition to his Report) in connection with the close out of the sale of the Real Estate or these proceedings.  Id. ¶ 34.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 11, 2022